UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**WILLIAM SAMMONS and
JANIE SAMMONS, as legal
guardians of A.S., an
incapacitated adult,**

       Plaintiffs,

vs.                          **Case No.: 8:04-CV-2657-T-24EAJ**

**POLK COUNTY SCHOOL BOARD,**

       Defendant.

_____/

## REPORT AND RECOMMENDATION

This cause came before the court on **Plaintiffs William Sammons and Janie Sammons' Motion for Preliminary Injunction** (Dkt. 7) filed January 19, 2005, and **Defendant's Response to Plaintiffs' Motion for Permanent Injunction** (Dkt. 16) filed February 4, 2005.[1] On February 14, 2005, Defendant filed an **Amended Motion to Admit Affidavit of Sherwin Holmes as Additional Evidence** (Dkt. 23) and a **Motion for Leave to File Amended Motion to Vacate Evidentiary Hearing or Limit Scope of Hearing.**[2] (Dkt. 24)

---

[1] This matter was referred to the undersigned by the District Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 6.01(b), M.D. Fla., for proceedings, consideration and a Report and Recommendation on Plaintiffs' motion for preliminary injunction. (Dkt. 12)

[2] On February 17, 2005, these motions were referred to the undersigned by the District Judge.

An evidentiary hearing was held on February 25, 2005, with closing arguments on March 8, 2005, before the undersigned. (Dkt. 32, 35)  Transcripts of these proceedings were filed on March 23, 2005.  (Dkt. 40)

After fully considering the testimony and exhibits admitted into evidence, together with the legal arguments of the parties, it is recommended that Plaintiffs' motion for preliminary injunction be granted.

I.   **Factual Findings**

   **A.   Background**

1.   Plaintiffs, William and Janie Sammons, are parents and legal guardian of A.S.

2.   A.S. is a nineteen-year-old male with Asperger's Syndrome, a form of autism. (Dkt. 27 at 2)[3]   A.S. is nonverbal and largely communicates through sign language and assistive technology. (T2 at 39)[4]  According to his father, A.S. exhibits rote memory skills, but has the behavior generally of a six-year old child.  (T2 at 38)

3.   Prior to May 12, 2004, A.S. received exceptional education services from Defendant, Polk County School Board.  From the time

_____

   [3]   On February 22, 2005, the parties filed a Joint Pre-Evidentiary Statement which contained certain stipulated facts. (Dkt. 27) The other facts are based on a preponderance of the credible evidence.

   [4]   "T1" and "T2" refer to the transcript of the hearing on February 25, 2005.  (Dkt. 40) "T3" is the transcript of closing arguments on March 8, 2005.  (Dkt. 40)

2

A.S. was enrolled in kindergarten, A.S. has received educational services from Defendant.  (Dkt. 27 at 2)

4.   On or about October 6, 2003, Defendant and Plaintiffs agreed upon an Individual Educational Plan ("IEP") for A.S. (Pl. Ex. 3)[5]  Based upon the IEP team's consideration of A.S.'s strengths, the results of his most recent evaluation, and the concerns of A.S.'s parents, the IEP set forth the desired outcomes, goals and objectives for A.S.'s education.[6]  (Pl. Ex. 3 at 3)  In particular, the October 6, 2003 IEP stated that one of A.S.'s priority educational needs was the ability to express his ideas in written form. (Pl. Ex. 3 at 3, 6-7)  As such, the curriculum and learning portion of the October 6, 2003 IEP included the objective of writing short stories and simple poems.  (Pl. Ex. 3 at 6-7)  In addition, pursuant to the October 6, 2003 IEP, A.S. was assigned a teacher and paraprofessional who taught A.S. in a separate portable classroom near Bartow Senior High School.[7] (Pl. Ex. 3 at 21)

---

[5] "Pl. Ex." refers to Plaintiffs' hearing exhibits. (Dkt. 38)

[6] The October 6, 2003 IEP covered the domains and transition services activity areas to be used by Defendant for A.S.'s education. (Pl. Ex. 3 at 3)  The domains included: (1) curriculum and learning; (2) social emotional behavior; (3) independent functioning; (4) health care; and (5) communication.   The transition services activity areas included instruction, related services, and daily living skills.  (Id.)

[7] A.S.'s teacher and paraprofessional taught A.S. alone in a portable not attached to other classrooms due to concerns regarding A.S.'s behavior. (Pl. Ex. 3 at 8, 18, 21; T1 at 75)

**B.    The Dispute over A.S.'s IEP**

5.   On or about February 23, 2004, at an annual meeting to review A.S.'s IEP, Plaintiffs were informed that A.S. would graduate in May of 2004 if he received all of his academic credits. (Dkt. 27 at 2; Pl. Ex. 4, 5)   In the February 23, 2004 IEP, Defendant proposed eliminating any goals that required completion of written work by A.S.[8] (Pl. Ex. 5)  Because A.S. is nonverbal and limited in his communication abilities, Plaintiffs specifically opposed eliminating written work requirements for A.S. (T2 at 42-43) Additionally, Plaintiffs challenged the proposed February 2004 IEP because they believed the proposed IEP did not meet A.S.'s academic, social, emotional, behavioral or independent functional needs. (Pl. Ex. 9; T2 at 43)  Consequently, Plaintiffs objected to the proposed graduation and refused to sign the proposed IEP. (Dkt. 27 at 2; Pl. Ex. 5, 9)

6.   In response to Plaintiffs' objection to the IEP, Defendant issued Plaintiffs an Informed Notice of Refusal. (Pl. Ex. 5 at 20) The Informed Notice of Refusal, dated February 23, 2004, rejected Plaintiffs' proposal to change A.S.'s diploma option from a standard diploma to a special diploma. (Id.) Defendant stated that based on a review of A.S.'s records and the state guidelines for graduation, A.S. "is expected to meet all requirements to graduate

---

[8]   Unlike the October 6, 2003 IEP, the February 23, 2004 IEP did not include the domain and transition services activity area of curriculum and learning. (Pl. Ex. 3 at 3; Pl. Ex. 5 at 2)

4

with a Standard Diploma in May 2004." (<u>Id.</u>)   In addition, in a separate Prior Written Notice dated February 23, 2004, Defendant rejected the option of not graduating A.S. because "not to graduate [A.S.] based on his disability would be discriminatory." (Dkt. 47, Def. Ex. 2)

7.   Subsequent to the February annual meeting, Plaintiffs consulted Mr. Mark Kamleiter, Esq. ("Kamleiter"), the attorney who represented Plaintiffs throughout the administrative proceedings. (T1 at 27)   Kamleiter reviewed the February 23, 2004 proposed IEP and advised Plaintiffs as to procedural avenues available to them under the law. (<u>Id.</u>)

8.   Mr. William Sammons ("Sammons") knew that he could file for a due process hearing anytime he wanted, but he did not do so immediately after the February 2004 IEP meeting. (T2 at 59) Instead, he sought to obtain records from the school system. (<u>Id.</u>) He testified that he also needed to have a "cooling off period" and to "calm down." T2 at 59-60   In his prior dealings with Defendant, Sammons had never been told of any deadline for requesting a due process hearing or mediation. (T2 at 60)[9]

---

[9]   At closing argument, Defendant disavowed any reliance on a theory that Plaintiffs' failure to seek another IEP meeting until April 20, 2004 lulled Defendant into believing that Plaintiffs had no objection to A.S.'s graduation.  (T3 at 24-26)

**C.   Request for Mediation**

9.   On April 20, 2004, Plaintiffs wrote a letter to Defendant's Director of Exceptional Student Education ("ESE Director"), with copies to the Superintendent, Assistant Superintendent, and all Board Members of the Polk County School Board. (Dkt. 27 at 2)  The letter notified Defendant of Plaintiffs' opposition to the proposed February 2004 IEP. (Pl. Ex. 9)

10.   Plaintiffs' April 20, 2004 letter provided in pertinent part that "[t]his is an urgent matter and we formally request either a new IEP meeting or mediation on this issue." (Pl. Ex. 9 at 1)  Plaintiffs expressly advised Defendants that ". . . we do not want [A.S.] to graduate and that we intend to challenge any IEP, which purports to be a terminal IEP for our son." (Id.)

11.   In their April 20, 2004 letter, Plaintiffs asked that Defendant conduct additional evaluations of A.S., including a functional behavior assessment and an academic review to determine whether A.S. met the state standards or earned the credits he was awarded. (Pl. Ex. 9 at 2)  Plaintiffs stated that their requests were "formal" requests. (Id.)  Finally, Plaintiffs expressly requested that Defendant provide a written, formal Informed Notice of Refusal in the event that Defendant declined any of Plaintiffs' requests. (Id.)

12.   On May 7, 2004, Defendant's ESE Director, Mr. Sherwin Holmes ("Holmes"), responded to Plaintiffs' April 20, 2004 letter.

(Pl. Ex. 9 at 11)  In his letter, Holmes advised Plaintiffs that he had instructed his staff to schedule a new IEP meeting. (Id.)  In response to Plaintiffs' requests for several evaluations of A.S., Holmes informed Plaintiffs that he had referred the matter to the IEP team for discussion consistent with applicable federal and state law. (Id.)  Plaintiffs received Holmes's letter on May 8, 2004. (Dkt. 27 at 2)

13.  Consistent with Holmes's May 7, 2004 letter to Plaintiffs, Defendant sent Plaintiffs a notice of a new IEP meeting. (Pl. Ex. 9 at 14)  Sharon Alcorn, a Staffing Specialist for the Polk County School Board, sent Plaintiffs an IEP meeting notice, dated May 7, 2004, advising Plaintiffs that a new IEP meeting was scheduled for May 21, 2004. (Id.)  The reason for the May 21, 2004 meeting was to: (1) consider "[t]ransition services needs;" (2) review "diploma option;" (3) discuss "all reevaluation information/needs;" (4) review "present level information;" (5) consider "possible changes in service(s);" (6) consider "change of free appropriate public education;" and (7) "review the Individual Education Plan." (Id.)

14.  On May 13, 2004, Plaintiffs received a notice from Bartow Senior High School entitled "Important Dates for Seniors." (Pl. Ex. 9 at 12)  The notice indicated that graduation was on May 20, 2004. (Id.)  A district school calendar also listed May 20, 2004 as graduation day for seniors attending A.S.'s high school. (Pl. Ex.

9 at 13)  A.S.'s regular diploma is dated May 20, 2004.  (Pl. Ex. 1A at Ex. J)

15.  The same day – May 13, 2004 – an ESE Coordinator e-mailed Plaintiffs that there was no school the following day due to graduation practice. (Pl. Ex. 1A at 6)  Plaintiffs became concerned that Defendant intended to graduate A.S. even though an IEP meeting had been scheduled for May 21, 2004.  (Id.)

16.  On May 14, 2004, attorney Kamleiter notified Defendant that he had been retained by Plaintiffs. (Pl. Ex. 1B at 6)  In his letter, Kamleiter requested a new date for the IEP meeting set for May 21, 2004 because of a scheduling conflict.  (Id.)  Regarding Defendant's proposed graduation of A.S., Kamleiter wrote:

> It would be helpful if [A.S.'s] parents could be reassured that it is not Polk Counties [sic] intention to graduate [A.S.] and end his rights to educational services.  This letter is intended to communicate the Sammons [sic] absolute rejection [sic] to graduation at this time.  If it is necessary to file a Due Process Request to stay any effort to graduate [A.S.], please provide me with an immediate Informed Notice of Refusal and so indicate.

(Id.)

**D.   Request for Due Process Hearing**

17.  As of May 17, 2004, Plaintiffs had not received a response to Kamleiter's letter to Defendant. (T1 at 37)  Therefore, on May 17, 2004, Plaintiffs formally requested an impartial due process hearing to challenge the proposed graduation.  (Pl. Ex. 7)  Plaintiffs advised Defendant that the request was being filed due

8

to the rapid approach of graduation on May 20, 2004. (<u>Id.</u>)
Plaintiffs also requested an emergency injunction requiring
Defendant to maintain A.S.'s current educational placement pending
Plaintiffs' challenge to the proposed graduation. (<u>Id.</u>)

18.   By letter dated May 18, 2004, Defendant requested an
Administrative Law Judge ("ALJ") in the Division of Administrative
Hearing ("DOAH") to be appointed to hear Plaintiffs' due process
request. (Pl. Ex. 8) The letter further stated that A.S. graduated
on May 13, 2004, and that "[t]he ceremony is merely set for May 20,
2004." (<u>Id.</u>)

### E.   Administrative Proceedings

19.   On August 6, 2004, Plaintiffs sought a hearing before the
ALJ on the request for an emergency injunction and filed a motion
to determine the burden of proof and the order of proceeding. (Dkt.
27 at 2)  Defendant filed an opposition to Plaintiffs' motion for
an emergency injunction. (Pl. Ex. 1H)  In support of its motion in
opposition, Defendant attached an affidavit from an administrative
employee indicating that graduation occurs when the last
requirement is satisfied, which is typically when the student's
teacher turns in the final grades. (Pl. Ex. 1I at 2-3)  According
to the affidavit, when A.S.'s teacher turned in the grades for A.S.
on May 13, 2004, A.S. met the requirements for graduation and had
actually graduated that same day. (<u>Id.</u>; Dkt. 27 at 3)

20.  On August 8, 2004, Defendant filed a Motion to Clarify and/or Set Issue for Hearing. (Pl. Ex. 1M)  The motion asserted that A.S. had graduated from high school with a regular diploma on May 13, 2004. (_Id._; Dkt. 27 at 3)  As a result, Defendant argued that Plaintiffs' request for an impartial due process hearing was untimely. (_Id._)  Defendant further asserted that DOAH had no authority to conduct a post-graduation review of A.S.'s IEP or render a post-graduation determination of the educational program provided to A.S. (_Id._)

21.  On or about August 11, 2004, the ALJ ruled on Defendant's Motion to Clarify and held that "[t]he issue in this case is whether the Petitioner met requirements to receive a regular high school diploma." (Pl. Ex. T at 1)  By separate order dated August 11, 2004, the ALJ denied Plaintiffs' motion for emergency injunction to enforce A.S.'s "stay put" rights. (Pl. Ex. U at 1) The order provided in pertinent part:

> According to the affidavit of Bruce Tonjes, Director of Secondary Education for the School Board of Polk County, Florida, filed as an exhibit to the Respondent's response to the motion, it appears that the Petitioner completed all requirements for graduation with a regular diploma from the Polk County School System on May 13, 2004.  The Petitioner's request for Due Process Hearing was filed on May 17, 2004.  The Petitioner acknowledges in paragraph ten of its motion that the Petitioner graduated and that the request for due process hearing was filed after such graduation.

(_Id._)

10

22.  A three day hearing before the ALJ on Plaintiffs' request for a due process hearing was held from August 17, 2004 through August 19, 2004. (Pl. Ex. 1EE)   At the hearing, Plaintiffs presented the testimony of A.S.'s father; Bruce Thornhill, A.S.'s teacher; Teri Bronson, ESE Coordinator for Polk County School Board; and Dr. Tashawna Duncan, a licensed psychologist. (Pl. Ex. 1DD at 3, Pl. Ex 1EE).  Plaintiffs' Exhibits 1 and 4 were admitted into evidence. (Pl. Ex. 1DD at 3)   Defendant presented the testimony of Dr. Bruce Tonjes, Director of Secondary Education for Polk County School Board; Wilma Ferrer, Senior Assessment for Polk County School Board; Betty E. Clemons, Assistant Principal for Curriculum at Bartow High School; and Holmes, ESE Director for Polk County School Board. (Id.)   Defendant's Exhibits 3, 4, 9 and 11 were admitted into evidence. (Id.)

23.  At the administrative hearing, Plaintiffs proffered evidence that they were not provided adequate notice of graduation and, in fact, were misled into not filing their request for a due process hearing earlier due to the misleading notice given by Defendant. (Dkt. 27 at 3)  Plaintiffs also offered evidence that Defendant had failed to provide A.S. with a free appropriate public education.  (Pl. Ex. S at 2, Pl. Ex. BB at 3)  The ALJ excluded this evidence and held that the sole issue was whether A.S. met the requirements to receive a regular high school diploma. (Dkt. 27 at 3; Pl. Ex. T; Pl. Ex. EE at 22-23, 26-27, 80-88, 94, 97-99, 102,

118, 132, 226, 243-44, 342, 356, 386-87)

24.  In his final order, dated November 10, 2004, the ALJ rejected Plaintiffs' challenges to graduation. (Pl. Ex. DD)  The ALJ concluded that, as of May 13, 2004, A.S. had passed the required portions of the Florida Comprehensive Assessment Test ("FCAT"), had exceeded the required cumulative grade point average for graduation, and had earned sufficient academic credit to graduate from Bartow Senior High School with a regular diploma. (Pl. Ex. DD at 11-12)  Moreover, the ALJ held that after A.S.'s graduation on May 13, 2004, Defendant was under no obligation to provide a free appropriate public education to A.S. (Id.) Therefore, the ALJ determined that, absent authority to conduct an after-the-fact review of the February 23, 2004 IEP, he lacked jurisdiction to consider whether or not A.S. received a free appropriate public education. (Id.)

   **F.   Federal Court Action**

25.  Within 30 days of the final order, Plaintiffs filed the instant federal court action. (Dkt. 1)

26.  Plaintiffs' Complaint alleges: (1) Defendant improperly terminated A.S.'s education by graduating him with a regular high school diploma; (2) Defendant violated and continues to violate the "stay put" provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et. seq. and the Civil Rights Act, 42 U.S.C. § 1983; (3) the ALJ erred as a matter or law in deciding

that Plaintiffs' request for an impartial due process hearing was untimely; and (4) the ALJ erred by refusing to consider evidence of Defendant's actions and internal policies leading to A.S.'s graduation. (Dkt. 1)

27.   A.S. has not received educational services from Defendant since May 13, 2004. (Dkt. 27 at 3)

28.   An evidentiary hearing was held on February 25, 2005, before the undersigned on Plaintiffs' Motion for Preliminary Injunction.  (Dkt. 32)  In support of their positions, the parties presented exhibits and witness testimony.

29.   In addition to the arguments asserted before the ALJ, Defendant offered a new argument that A.S.'s educational placement prior to graduation is no longer available. (Dkt. 16 at 10)  Holmes testified that A.S.'s teacher was quickly reassigned to another position and A.S.'s paraprofessional is no longer employed by Defendant. (T1 at 67, 70)  Further, Holmes stated that the portable classroom where A.S. spent most of his school day is devoted to other uses and was relocated after the administrative hearing. (T1 at 67, 91-92)  According to Holmes, hiring a teacher and paraprofessional for A.S. as well as recreating a space for a portable classroom would be a burden for Defendant and would cost $143,000. (T1 at 61, 92)  Nonetheless, Holmes testified that there are similar portables in the "back wing" of the school and that it is possible that another high school in the county could set up a

similar portable and educate A.S. in accordance with his IEP. (T1 at 74-76)[10]

## II.  Conclusions of Law

The purpose of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). The federal government provides funds to states and local agencies to implement the IDEA on the condition that recipients of these funds comply with the statute's substantive and procedural requirements. Honig v. Doe, et. al., 484 U.S. 305, 310 (1988); Wagner v. Bd. of Educ. of Montgomery County, 335 F.3d 297, 300 (4th Cir. 2003). The primary substantive guarantee of the IDEA is the provision of a free appropriate public education (FAPE) to students with disabilities aged 3 through 21. 20 U.S.C. § 1412(a); 34 C.F.R. § 300.121(a); Sch. Bd. Of Collier County v. K. C., 285 F.3d 977, 979 (11th Cir. 2002). The statute defines FAPE as special education services that: (1) have been provided at public expense, under public supervision and direction, without charge; (2) meet the standards of the state educational agency; (3) include an

_____

[10] Holmes also testified that if Plaintiffs had made their demand for a due process hearing on May 12, 2004, Defendant would have maintained the facilities in which it educated A.S. (T1 at 68-69)

14

appropriate preschool, elementary, or secondary school education in the state involved; and (4) are provided in conformity with the individualized education program required under § 1414(d).   20 U.S.C. § 1401(8).

To provide a FAPE, a school formulates an IEP during a meeting between the student's parents and school officials.  <u>See</u> 20 U.S.C. § 1414(d)(1)-(3).   A school must amend an IEP if the IEP's objectives are not met, but the statute does not require perfection.  20 U.S.C. § 1414(d)(4); <u>Loren F. v. Atlanta Indep. Sch. Sys.</u>, 349 F.3d 1309, 1312 (11th Cir. 2003).   Under 34 C.F.R. § 300.122(a)(3)(i), a local educational agency does not have the obligation to make FAPE available to students with disabilities who have graduated from high school with a regular high school diploma.

In their motion, Plaintiffs seek preliminary and permanent injunctive relief under the IDEA and 42 U.S.C. § 1983 for Defendant's alleged violations of the "stay put" provisions of the IDEA. (Dkt. 7 at 1) Specifically, Plaintiffs seek an order directing Defendant to comply with the "stay put" provisions of the IDEA and return A.S. to his educational placement as it existed under the October 6, 2003 IEP during the pendency of these proceedings, to provide A.S. compensatory education for the period

his "stay put" rights were allegedly violated,[11] and to award other
relief as may be appropriate.   (Dkt. 7 at 20)

For purposes of preliminary injunctive relief, the dispositive
issue is whether Defendant violated the "stay put" provision by
graduating A.S.[12]   The court is not called upon to decide whether
A.S. was eligible for graduation, whether he should have received
a special rather than a regular diploma, and whether he received
a free appropriate education during the period of February 23, 2004
through May 13, 2004.[13]

> A.   **The court may supplement the administrative record by receiving additional evidence.**

The threshold issue is the scope of the evidence the court may
consider when determining whether the Defendant violated the IDEA's
"stay put" provision, 20 U.S.C. § 1415(j).  Citing Walker County v.

---

[11] A court award of compensatory education requires a school
district to provide education past a child's twenty-first birthday
to make up for any earlier deprivation.  See Todd D. v. Andrews,
933 F.2d 1576, 1584 (11th Cir. 1991).  At the hearing, Plaintiffs
stated that the primary purpose of their motion is to place A.S.
back in school, and suggested that the remedy of compensatory
education could be addressed at the end of the case. (T1 at 20)
Consequently, the parties did not present testimony or evidence on
Plaintiffs' request for compensatory education.  The sole issue
presented in this Report and Recommendation is whether Defendant
violated the IDEA's "stay put" provision when it graduated A.S.

[12] See (T1 at 19; T3 at 43)(comments of Plaintiffs' counsel and
Defendant's counsel regarding issue before the court).

[13] For example, Defendant's position is that if a student
receiving educational services under the IDEA meets graduation
requirements, the student must graduate regardless of whether the
goals of the IEP are met.  Plaintiffs disagree.

Bennett, 203 F.3d 1293 (11th Cir. 2000), cert. denied, 531 U.S. 1059 (2000), the Defendant contends that the scope of the evidence is limited to the administrative record and the three supplemental affidavits the parties filed. (Dkt. 24 at 1)[14] Plaintiffs counter that Defendant's reliance on Walker County is misplaced because (1) the case does not deal with an action to enforce the "stay put" provision; (2) Plaintiffs also seek injunctive relief under 42 U.S.C. § 1983; and (3) Walker County applies when the court addresses the merits of Plaintiffs' challenges to Defendant's actions, not in the preliminary injunction setting. (Dkt. 25) Finally, even if Walker County does control, Plaintiffs assert that it permits the district court to consider the two categories of supplemental evidence at issue. (Id. at 4-5)

The administrative record is the focal point for judicial review of an administrative agency's action. Camp v. Pitts, 411 U.S. 138, 142 (1973); Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'r, 87 F.3d 1242, 1246 (11th Cir. 1996). The role of the court is not to conduct its own

_____

[14] Defendant also argues that the statute of limitations has run on Plaintiffs' challenge to the ALJ's "stay put" determination. (Dkt. 25 at 13) This argument is baseless. Plaintiffs filed their Complaint within 30 days of the ALJ's November 10, 2004 Final Order. The ALJ issued his Final Order on November 10, 2004, and Plaintiffs filed their Complaint for Injunctive and Other Equitable Relief on December 9, 2004. Nothing in the ALJ's August 11, 2004 order denying relief under the "stay put" provision notified Plaintiffs that it was a final, appealable order, unlike the November 10, 2004 final order.

17

investigation and substitute its own judgment for the administrative agency's decision. <u>Pres. Endangered Areas</u>, 87 F.3d at 1246. Instead, the court must decide, on the basis of the record the agency provides, whether the agency's action passes muster under the appropriate standard of review. <u>Id.</u> Addressing the issue of the standard of review a court should apply in an IDEA case, the Eleventh Circuit has held that the court has the discretion to determine the extent of deference afforded administrative findings. <u>Walker County</u>, 203 F.3d at 1297-98. Though the court must consider administrative findings, it is free to accept or reject them. <u>Id.</u> at 1298.

In addition to the appropriate standard of review, the <u>Walker County</u> court discussed the scope of the evidence a court may consider when reviewing agency action. <u>Id.</u> In <u>Walker County</u>, the school board filed a case in district court under 20 U.S.C. § 1415(i)(2)[15] seeking review of the state agency's determination that the school board was required to reimburse a disabled child's parents for the cost of private school education. <u>Id.</u> at 1294-95.

<u>Walker County</u> adopted the First Circuit's opinion in <u>Burlington v. Dep't of Educ.</u>, 736 F.2d 773, 790-91 (1st Cir. 1984),

---

[15] This subsection provides an aggrieved party with the right to bring an action in district court and states: "In any action brought under this section, the court-(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. § 1415(i)(2)(B).

aff'd, 471 U.S. 359 (1985), and held that the IDEA "contemplates that the source of the evidence generally will be the administrative hearing record, with some supplementation at trial." 203 F.3d at 1298. Reasons for supplementing the records may include (1) gaps in the administrative transcript owing to mechanical failure; (2) unavailability of a witness; (3) an improper exclusion of evidence by the administrative agency; and (4) evidence concerning relevant events occurring subsequent to the administrative hearing. Id. Although this is a non-exhaustive list, a trial court should not allow additional evidence to change the character of the hearing from one of review to a trial *de novo*. Id.

Pursuant to <u>Walker County</u>, supplementation of the administrative record to consider the two additional categories of evidence urged by Plaintiffs is appropriate in this case. The first category addresses whether Plaintiffs received adequate notice of A.S.'s graduation with a regular high school diploma, as required by 34 C.F.R. § 300.122(a)(3)(iii). The ALJ refused to consider this evidence and found without discussion that A.S. graduated on May 13, 2004, not May 20, 2004. (Pl. Ex. T, Pl. Ex. U) The issue of notice of graduation, however, is relevant to Plaintiffs' contention that their May 17, 2004 request for a due process hearing was timely. The ALJ's exclusion of this evidence was improper, and this category of evidence should be considered.

The second category of evidence concerns Defendant's argument that A.S.'s educational placement prior to graduation is no longer available. Defendant contends that A.S.'s teacher and paraprofessional are no longer employed by the school system and that the portable classroom where A.S. spent most of his school days is devoted to other uses and has been relocated on the school's grounds. (Dkt. 16 at 10, T1 at 67, 91-92) Defendant did not assert this argument at the administrative level, and Plaintiffs seek to supplement the administrative record with evidence to counter this new information. (Dkt. 25 at 9) Under the fourth Walker County exception, Plaintiffs may submit evidence to refute this new evidence offered by Defendant.

**B.   Rule 65 does not apply to Plaintiffs' request for relief under the "stay put" provision.**

The next issue is whether the court should apply the traditional Rule 65, Fed. R. Civ. P., standards to Plaintiffs' request for injunctive relief under 20 U.S.C. § 1415(j).[16]

Section 1415(j), the "stay put" provision, requires a local educational agency such as the Defendant to maintain a child's current placement while a proceeding conducted pursuant to § 1415 is pending.  Section 1415(j) states:

_____

[16] The ALJ's Final Order did not discuss whether the Defendant violated the "stay put" provision.  Instead, the ALJ held that A.S. did not have a current educational placement on May 17, 2004, because he graduated on May 13, 2004. (Pl. Ex. DD)  After reviewing the administrative record, and for the reasons stated below, this court disagrees with the ALJ's conclusion.

> Maintenance of current educational placement.
> Except as provided in subsection (k)(7)[17], during
> the pendency of any proceeding conducted pursuant
> to this section, unless the State or local
> educational agency and parents otherwise agree, the
> child shall remain in the then-current educational
> placement of such child, or, if applying for
> initial admission to a public school, shall, with
> the consent of the parents, be placed in the public
> school program until all such proceedings have been
> completed.

20 U.S.C. § 1415(j).

Plaintiffs argue that (1) Defendant's violation of the "stay put" provision entitles them to an automatic injunction, and the court need not evaluate Plaintiffs' request under Rule 65, Fed. R. Civ. P.; and (2) Plaintiffs satisfy the requirements for a preliminary injunction under Rule 65, Fed. R. Civ. P. (Dkt. 7) Defendant counters that it did not violate the "stay put" provision because A.S.'s pre-graduation placement is no longer available and Plaintiffs' request for a due process hearing occurred post-graduation.  Therefore, Defendant asserts, Plaintiffs must meet Rule 65's standards to receive injunctive relief under 20 U.S.C. § 1415(i)(2)(B)(iii), and they cannot. (Dkt. 16)

First, the court will address whether a violation of the "stay put" provision triggers an automatic injunction.  In <u>Cronin v. Board of Education of East Ramapo Central School District</u>, 689 F.Supp. 197 (S.D.N.Y. 1988), the parents challenged the school

---

[17] Subsection (k)(7) refers to a child's placement during an appeal of his or her placement in an alternative educational setting.

board's graduation of their disabled child as a violation of the "stay put" provision, then codified at 20 U.S.C. § 1415(e)(3). Discussing that provision, the court stated:

> Congress decided that the danger of excluding a handicapped child entitled to an educational placement from that placement was much greater than the harm of allowing a child not entitled to an educational placement to remain in that placement during the pendency of judicial proceedings. Thus, the statute provides that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current placement until the dispute with regard to their placement is ultimately resolved.

Id. at 202.  The court termed the relief sought under the "stay put" provision as an "automatic preliminary injunction . . . it appears that a Court need not apply the standard test for an injunction pursuant to Rule 65."  Id.

The only remaining question for the court, then, was whether the school board's decision to graduate the child was a change in educational placement.  Id.  The court held that graduation is a placement change that triggers protection under the IDEA: "There is no question that the termination of an individual child's educational program inherent in a graduation will significantly affect a child's learning process." Id. at 203; see also 34 C.F.R. § 300.122(a)(3)(iii) (stating that "[g]raduation from high school with a regular high school diploma constitutes a change in placement, requiring prior written notice . . ."). Therefore, the decision to graduate a handicapped child "triggers all of the

22

procedural protections of the Act." <u>Cronin</u>, 689 F.Supp. at 203; <u>see also</u> <u>Honig</u>, 484 U.S. at 324-25 (noting that Congress intended the "stay put" provision to bar schools from changing a child's educational placement over a parent's objection until all review proceedings are complete).[18]

In the absence of contrary binding authority, this court agrees with Plaintiffs that the holding in <u>Cronin</u> applies.[19]  <u>See</u>

_____

[18] In <u>Doe v. Brookline Sch. Comm.</u>, 722 F.2d 910, 917 (1st Cir. 1983), the First Circuit cautioned that the "stay put" provision should not be read to preempt judicial powers of equity granted under § 1415(i)(2)(B) (former section 1415(e)(2) under the EHA). The "stay put" provision, therefore, indicates a strong Congressional preference, but not a statutory duty, for maintenance of the status quo.  <u>Id.</u> at 918; <u>see</u> <u>also</u> footnote 20, <u>infra</u>.

[19] In <u>School Board of Pinellas County, Fla. v. J.M., by and through L.M.</u>, 957 F.Supp. 1252, 1257 (M.D. Fla. 1997), a Middle District of Florida court noted that there is a judicial exception to the presumption favoring a child's current placement if the placement threatens him or others or is a challenge to school safety.  The court then applied the traditional Rule 65, Fed. R. Civ. P., standards to a school board's request for a preliminary injunction to enjoin enforcement of the "stay put" provision.  <u>Id.</u> at 1257-58.  This is consistent with other courts' holdings that the party seeking modification of the status quo, not the party seeking to return the student to his then-current placement, bears the burden of proof and must proceed by a motion for preliminary injunction.  <u>See</u> <u>Brookline</u>, 722 F.2d at 917; <u>Bell v. Educ. in the Unorganized Territories</u>, 2000 WL 18555096 at *4-*5 (D. Me. 2000)(dismissing educational agency's argument that disabled child's parents were the party seeking to modify the status quo when it was the agency that made the unilateral decision to graduate child).  In this case, Plaintiffs seek to return A.S. to his pre-graduation placement, and neither party has argued that Defendant bears the burden of meeting Rule 65's standards for injunctive relief.  Therefore, the court does not consider the issue of whether Defendant would be required to satisfy Rule 65's standards if it brought a motion seeking to modify A.S.'s placement.

also Bd. of Educ. Of Cmty. High Sch. Dist. No. 218 v. Illinois State Bd. of Educ., 103 F.3d 545, 549-50 (7th Cir. 1996) (holding that if the "stay put" provision applies, the "equitable balancing reserved for preliminary injunctions has no place in this context. . . . [and] to import these factors into the stay put provision, we would dilute the statutory framework"); King v. Pine Plains Cent. Sch. Dist., 918 F.Supp. 772, 783 (S.D.N.Y. 1996) (stating that if the "stay put" provision applies, it affords an automatic preliminary injunction restoring the status quo, and plaintiffs need not satisfy the usual standards for injunctive relief); Cochran v. Dist. of Columbia, 660 F.Supp. 314, 319 (D.C. Cir. 1987) (although traditional preliminary injunction standards were not met, the court found that an injunction under the "stay put" provision would issue).

Thus, Plaintiffs' challenge to enforce the "stay put" provision and return A.S. to his pre-graduation placement need not meet the requirements of Rule 65, Fed. R. Civ. P.

**C.    A request for mediation is a "proceeding" under 20 U.S.C. § 1415(j).**

The next issue is whether the Defendant violated the "stay put" provision.  The parties agree that A.S.'s graduation in May 2004 with a regular high school diploma was a change in placement. However, the parties dispute whether Plaintiffs' request for mediation on April 20, 2004, triggered the "stay put" provision.

Plaintiffs argue that Defendant violated the "stay put" provision when it graduated A.S. in May 2004 despite Plaintiffs' April 2004 request for mediation or a new IEP. Defendant contends that only a request for a formal due process hearing before an administrative body, not a mediation request, triggers the "stay put" provision. According to Defendant, it did not violate the "stay put" provision because Plaintiffs' first request for a due process hearing occurred post-graduation, and a student's last educational placement is his placement on the date a due process hearing request is filed.

Defendant points to no persuasive authority suggesting that a mediation is not a proceeding.[20] Further, the language of the "stay put" provision and § 1415(e) regarding mediation undermines Defendant's argument. The "stay put" provision applies "during the pendency of *any proceeding conducted pursuant to this section* . .

---

[20]  See Michael C. ex rel. Stephen C. v. Radnor Township Sch. Dist., 202 F.3d 642, 654 (3d Cir.), cert. denied, 531 U.S. 813 (2000).  In Radnor, the district court held that "proceedings" conducted pursuant to § 1415(j) include proceedings set forth in § 1415(b).  Section 1415(b) deals with the conduct and development of evaluations, eligibility determinations, IEPs and educational placement.  20 U.S.C. § 1415(b).  Rejecting the district court's argument, the Third Circuit held that there were no "proceedings" conducted pursuant to § 1415(j) because § 1415(b) merely sets forth the "procedures" to be observed during the "proceedings." Id.  The Third Circuit, however, expressly noted that it was not addressing the issue of whether mediation procedures codified at § 1415(e) qualify as "proceedings conducted pursuant to" § 1415(j).  Id. at 654, n.11.

."²¹   20 U.S.C. § 1415(j) (emphasis added).   Subsection 1415(e)

specifically discusses mediation as a procedural safeguard available

under the section.   It states:

> In general.  Any State educational agency or local
> educational agency that receives assistance under
> this subchapter shall ensure that procedures are
> established and implemented to allow parties to
> disputes involving any matter described in
> subsection (b)(6)²² of this section to resolve such
> disputes through a mediation process which, at a
> minimum, shall be available whenever a hearing is
> requested under subsection (f) or (k) of this
> section.

Subsection 1415(f) specifically addresses due process hearings

and provides that a due process hearing is available whenever a

state or local educational agency receives a complaint from a

parent of a disabled child that challenges the child's educational

placement.   Thus, pursuant to the text of the statute, mediation is

a proceeding under section 1415(j).

---

²¹ The IDEA does not define "proceeding."  Undefined terms in
a statute must be given their ordinary meaning. <u>Asgrow Seed Co. v.
Winterboer</u>, 513 U.S. 179, 187 (1995).  Black's Law Dictionary
defines "proceeding" as "[t]he regular and orderly progression of
a lawsuit, including all acts and events between the time of
commencement and the entry of judgment. . ."  Black's Law
Dictionary 1241 (8th ed. 2004).  Although Black's definition
recognizes that a proceeding is normally part of "the business
conducted by a court or other body" it also acknowledges a broader
meaning as "any procedural means for seeking redress from a
tribunal or agency. . ." <u>Id.</u>  Mediation is within this definition
as a procedural means for Plaintiffs to seek redress from
Defendant.

²² Subsection (b)(6) provides that parents of a child with a
disability shall have an opportunity to present complaints with
respect to any matter relating to the identification, evaluation,
or educational placement of the child.  20 U.S.C. § 1415(b)(6).

26

Even if the language of the statute might somehow be interpreted as ambiguous on this issue, the legislative history of the IDEA makes it unmistakably clear that Congress intended mediation to be treated as a "proceeding" under section 1415(j).

In the 1997 House report discussing amendments to the "stay put" provision, the House Committee on Education and the Workforce explained that the procedural safeguards in the IDEA provide the foundation for ensuring access to a FAPE for children with disabilities. H.R. Rep. No. 105-95 at 105 (1997), reprinted in 1997 U.S.C.C.A.N. 78, 103. The "stay put" provision in particular is key to ensuring disabled children's due process and access to a FAPE. Id.

The statute was amended in 1997 to require states to offer mediation as a voluntary option to parents and schools as "an initial process" for resolving disputes. H.R. Rep. No. 105-95 at 106 (1997), reprinted in 1997 U.S.C.C.A.N. 78, 104.[23] Significantly, the committee report clarified that a state's

---

[23] During Senate debate on the amendments to the IDEA, Senator Connie Mack stated that the mediation program in Florida was an overwhelming success in resolving disputes and reducing costly litigation. 143 Cong. Rec. S4311, S4318 (1997). The amended bill was designed to ensure that parents have continued access to due process by requiring states to offer voluntary mediation services to parents and schools. Id. Similarly, during the House debate on this bill, the use of mediation to resolve disputes under the IDEA was addressed. Representative William Goodling, Chairman of the House Education and Workforce Committee, expressed his belief that the voluntary mediation process would replace litigation and division with a more cooperative process for resolving disputes. 143 Cong. Rec. H2498, H2538(1997).

mediation system may not be used to delay or deny a parent's right to due process.  Id.  After commenting on the success of mediation in states where the procedure was offered, the report stated:

> It is the Committee's strong preference that mediation become the norm for resolving disputes under IDEA.  The Committee believes that the availability of mediation will ensure that far fewer conflicts will proceed to the next procedural steps, formal due process and litigation, outcomes that the Committee believes should be avoided when possible.

Id.

Thus, Congress intended mediation to be an initial step in the due process procedure afforded to parents and schools under the Act.  Moreover, because Congress believed that mediation should become the norm for handling disputes under the IDEA, it is logical for this court to interpret "proceedings" under the "stay put" provision to include mediation.  If the parents of a disabled child are denied the right to enforce "stay put" provisions during mediation, and therefore denied the right to retain the child's current educational placement, there is no incentive for parents to engage in mediation.  Such an outcome would be contrary to Congress's intent to encourage the use of mediation to resolve IDEA disputes and avoid costly court action.

A search of Florida's Administrative Code reveals a final reason the "stay put" provision applies to mediation requests.  The IDEA incorporates state standards and a school district may violate the IDEA if it fails to satisfy the more stringent state law

28

requirements.  <u>Michael C.</u>, 202 F.3d at 652.  Florida law allows for both mediation and due process hearings as procedural safeguards available to parents challenging a child's change in placement and recognizes mediation as an attractive alternative to a due process hearing:

> While use of mediation and the state complaint procedure may be preferable and less litigious, due process hearings are required to be available to parents of students with disabilities and to school districts to resolve matters related to the identification, evaluation, or educational placement of the student or the provision of a free appropriate public education.

Fla. Adm. Code Ann. 6A-6.03311(11).

Section 1415(j) applies to both requests for mediation and due process hearings, and Defendant violated the "stay put" provision when it failed to maintain A.S.'s educational placement despite Plaintiffs' April 20, 2004 request for mediation.  Defendant's position that the "stay put" provision does not apply to mediation requests because mediation is discussed in a separate subsection of § 1415 is illogical and contrary to statutory intent.  Plaintiffs' April 20, 2004 request for mediation occurred prior to May 13, 2004, the date Defendant contends was A.S.'s graduation.  Defendant violated the "stay put" provision when it failed to maintain A.S.'s then-current educational placement.

Plaintiffs also allege that their May 17, 2004 request for a due process hearing was timely because A.S.'s actual graduation date was May 20, 2004, the date on his diploma and the date of his

29

graduation ceremony. (Dkt. 7 at 4-5)   While holding that Plaintiffs' April 20, 2004 mediation request triggered the "stay put" provision, the court also will address Plaintiffs' alternate argument that Defendant is equitably estopped from contending that May 13, 2004 was A.S.'s graduation date.

The doctrine of equitable estoppel applies when a party makes a detrimental change in position based on its good faith reliance on the words or deeds of the party against whom the estoppel claim is asserted. Irvine v. Cargill Investor Serv. Inc., 799 F.2d 1461, 1463 (11th Cir. 1986).   The doctrine is grounded on principles of fair dealing and substantial justice and arises when one party lulls another into a disadvantageous legal position.   See DeShong v. Seaboard Coast Line R Co., 737 F.2d 1520, 1522 (11th Cir. 1984) ("Under the doctrine of equitable estoppel a party with full knowledge of the facts, who accepts the benefits of a transaction, contract, statute, regulation or order, may not subsequently take an inconsistent position to avoid the corresponding obligations or effects").   The doctrine is designed "to aid the law in the administration of justice where without its aid injustice might result." Marine Transp. Serv. Sea-Barge Group, Inc. v. Python High Performance Marine Corp. 16 F.3d 1133, 1138 (11th Cir. 1994) (quoting DeShong, 737 F.2d at 1522).[24]

───────────────

[24] In Byron Armstrong, et. al. v. Paul Vance, et. al., 328 F.Supp.2d 50, 58-59 (D.D.C. 2004), the court addressed equitable estoppel in the context of an attorneys' fees issue under the IDEA.

The court agrees that Defendant is equitably estopped from asserting that A.S. graduated on May 13, 2004. First, Plaintiffs received a school calendar indicating that senior graduation was to occur on May 20, 2004. (Pl. Ex. 9 at 13) Second, Defendant disseminated to seniors a document listing important dates, including May 20, 2004 as graduation day. (Pl. Ex. 9 at 12) In fact, A.S.'s diploma is dated May 20, 2004. (Pl. Ex. 1A, Ex. J) Finally, on May 7, 2004, in response to Plaintiffs' April 20, 2004 letter requesting either mediation or a new IEP meeting, the Defendant sent Plaintiffs a notice that an IEP meeting was scheduled for May 21, 2004. (Pl. Ex. 9 at 14) Defendant's position that it had no choice but to schedule an IEP meeting because as of April 20, 2004, A.S. had not yet graduated is unconvincing. (T1 at 81; T3 at 36) If Defendant had told Plaintiffs that its scheduling of the May 21, 2004 IEP was a mere technicality, Plaintiffs would have requested a due process hearing earlier. (T1 at 33-34)

---

First, the court noted that the doctrine of equitable estoppel is applicable to government agencies, but "such application 'must be rigid and sparing'." Id. at 58, quoting ATC Petroleum, Inc. v. Sanders, 860 F.2d 1104, 1111 (D.C. Cir. 1988). The court found that the elements of equitable estoppel were not met for the majority of the plaintiffs. Id. Nevertheless, the court applied the doctrine of equitable estoppel and awarded two plaintiffs attorneys' fees because the settlement agreements clearly stated these plaintiffs were the prevailing parties and were entitled to fees. Id. at 59; see also Town of Burlington, 471 U.S. 359, 374 (stating that equitable considerations are relevant in fashioning relief under the IDEA).

31

Plaintiffs relied in good faith on Defendant's prior statements that graduation would take place on May 20, 2004. Defendant's actions lulled Plaintiffs into believing that A.S.'s graduation would occur on May 20, 2004, and then lulled them into believing that Defendant would maintain A.S.'s then-current graduation placement pending the IEP meeting.  It was only on May 13, 2004, when an ESE Coordinator e-mailed Plaintiffs that there was no school the following day due to graduation practice, that Plaintiffs grew concerned about Defendant's apparent intent to continue with its plans to graduate A.S. (Pl. Ex. 1A at 6) Therefore, the elements of equitable estoppel are satisfied. Accordingly, this court rejects Defendant's contention that A.S. graduated on May 13, 2004 rather than on the scheduled graduation date of May 20, 2004, and Defendant is equitably estopped to argue otherwise.  Thus, Plaintiffs' May 17, 2004 request for a due process hearing was timely and his graduation was a change in educational placement which violated the "stay put" provision.

**D.   Defendant's argument that A.S.'s placement is unavailable is without merit.**

Finally, Defendant, citing <u>Wagner</u>, 335 F.3d at 299, argues that even if this court enforces the "stay put" provision and orders it to return A.S. to his educational placement prior to graduation, the

32

placement is unavailable due to personnel and physical plant changes at the school. (Dkt. 16 at 10)[25]

In <u>Wagner</u>, the school district proposed an amendment to an autistic child's IEP after the child's educator refused to provide services.  <u>Id.</u> at 298.  The parents filed suit in district court challenging the new IEP and seeking an injunction under the "stay put" provision.  <u>Id.</u>  The court found that the child's then-current placement was unavailable because there was only one program in the country that offered the services mandated in the child's IEP, there was only one provider qualified to implement this program in the state, and this one provider was unavailable.  <u>Id.</u> at 299.  Further, the court held that "when the current placement is unavailable in order to comply with the 'stay put' provisions, the [School Board] is obligated to provide an alternative placement that is a comparable program, capable of implementing an IEP that does not

---

[25] Defendant also argues that this case is moot because A.S.'s educational placement on the date of Plaintiffs' request for a due process hearing was that of a graduated student. (Dkt. 92 at 6) This argument is self-serving: Defendant's position, in essence, is that school boards that unilaterally graduate disabled students in violation of the IDEA can shield themselves from liability by relying on the fact that the student improperly graduated is no longer in his current placement.  There is no support for this position.  <u>See</u> <u>Bell</u>, 2000 WL 1855096 at *5 (stating that because graduation "entails the transmission of a diploma and some measure of pomp and circumstance" does not inoculate graduation from the possibility that it is simply another form of illegal exclusion); <u>Honig</u>, 484 U.S. at 323 (noting Congress meant to strip schools of the unilateral authority they had traditionally employed to exclude disabled students).

constitute a change in placement." _Id._ (internal citations omitted).

On appeal, the Fourth Circuit upheld the district court's finding that the then-current placement was unavailable. _Id._ at 301. The court noted: "This case is atypical in that the School Board is not trying to change Daniel's placement; the placement has simply become unavailable through no fault of the School Board." _Id._ at 300. However, the Fourth Circuit also found that the district court erred in its interpretation of the "stay put" provision. _Id._ at 301. While agreeing that a "stay put" injunction is "automatic; the party seeking it need not meet the usual requirements for obtaining preliminary relief," the court held that § 1415(j) does not require a school board to propose an alternative placement if the then-current placement is unavailable. _Id._ After finding that a "stay put" injunction was inappropriate due to the unavailability of the child's educational placement, the court restricted the child's parents to seeking an injunction under § 1415(i)(2)(B)(iii). _Id._ at 302.

_Wagner_ is inapposite to this case. Here, there is no evidence that A.S.'s pre-graduation placement is unavailable due to circumstances beyond Defendant's control that make it impossible for Defendant to recreate the services required under A.S.'s IEP. Further, this court agrees with the Fourth Circuit's holding in _A.W. v. Fairfax County Sch. Bd._, 372 F.3d 674 (4th Cir. 2004), that the

34

"stay put" provision fixes the overall institutional setting in which a disabled child receives his or her education, "rather than the precise location of that setting . . . ." Id. at 683.

Shortly after the administrative hearing, Defendant purposely relocated the portable classroom in which A.S. was taught. (T1 67, 70) Currently, the portable is being used for another purpose. (T1 at 70)[26] Although A.S.'s teacher, Thornhill, has taken a different job in the school district, and A.S.'s paraprofessional no longer works in the school system, there is no evidence that Thornhill and the paraprofessional are the only instructors qualified to teach A.S. (See T1 at 67, 72-73)   In fact, Holmes testified that if Plaintiffs had made their demand for a due process hearing on May 12, 2004, one day before A.S.'s alleged graduation date, rather than May 17, 2004, Defendant would have maintained the facilities in which it educated A.S. (T1 at 68-69)  Holmes estimated that it will cost $143,000 for Defendant to recreate A.S.'s exact educational environment as it existed prior to his graduation. (T1 at 61) This amount represents the cost of another portable classroom and salaries for a teacher and paraprofessional.   In the absence of evidence that the particular portable classroom Defendant provided for A.S. is unique, crucial to providing A.S. services under his

---

[26] Holmes testified that there are similar portables in the "back wing" of the school and that it is possible another high school in the county could set up a similar portable and educate A.S. in accordance with his IEP. (T1 at 75-76)

IEP, and irreplaceable, the court finds Defendant's argument meritless.

### E.   Preliminary Injunctive Relief is Appropriate

Defendant's violation of the "stay put" provision entitles Plaintiffs to an automatic injunction.  However, even if the court were to apply Rule 65, Fed. R. Civ. P., Plaintiffs meet the requirements for preliminary injunctive relief.   Courts in the Eleventh Circuit grant injunctive relief only if the moving party shows that:  (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.  _Klay v. United Heathgroup, Inc._, 376 F.3d 1092, 1097 (11th Cir. 2004).

In _Honig_, 484 U.S. at 328 n.10, the Supreme Court indicated that a violation of the "stay put" provision is presumptive evidence of irreparable harm.  _See also_ _Cronin_, 689 F.Supp at 204.   In response to the government's argument that the district court improperly presumed the students were irreparably harmed when their "stay put" rights were violated, the Court stated: "[W]e do not believe that school officials can escape the presumptive effect of the stay-put provision simply by violating it and forcing parents to petition for relief."  _Id_.  In this case, however, the court

finds that even without this presumption of irreparable harm Plaintiffs meet the traditional requirements for injunctive relief.

First, A.S. will suffer irreparable harm if this injunction is not granted. Without an injunction, A.S. will remain out of school, receiving no instruction at all. This type of cessation of his education may cause interruption of other developmental processes as well. See <u>Cronin</u>, 689 F.Supp. at 204. Similarly, the balance of the hardships lies in Plaintiffs' favor. Holmes estimated that the harm to Defendant if the court grants the preliminary injunction is $143,000. (T1 at 61, 92) Even a much higher cost to Defendant cannot outweigh the harm to A.S. if he is further excluded from his educational program.

Next, with respect to the merits, the court agrees with the finding in <u>Cronin</u> that "in light of the unequivocal language of the stay put provision, to require in the traditional sense either success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation would be inconsistent with the intent of Congress." 689 F.Supp. at 204. The "stay put" provision was intended to keep a child in his or her current educational placement during the pendency of administrative or judicial proceedings, no matter what their merit. <u>Id</u>. Therefore, as described in more detail below, because Plaintiffs have satisfied the conditions to a challenge under the "stay put"

provision, the court will not examine Plaintiffs' likelihood of success on the merits of their claims.

Finally, the grant of a preliminary injunction returning A.S. to his pre-graduation placement will not disserve the public interest and in fact will serve the public good in encouraging the continued education of a disabled child in order to transition him to the work place or higher education.

All of the requirements under Rule 65, Fed. R. Civ. P., are met, and Plaintiffs are entitled to an injunction under the "stay put" provision.

## III.    <u>Conclusion</u>

It is therefore **RECOMMENDED** that:

(1)    **Plaintiffs William Sammons and Janie Sammons' Motion for Preliminary Injunction** (Dkt. 7) be **GRANTED**;

(2)    Defendant be ordered to return A.S., as soon as practicable, to his educational placement as it existed under the October 6, 2003 IEP (Pl. Ex. 3) during the pendency of these proceedings; and

(3)    Pursuant to this court's finding that it may consider evidence outside of the scope of the administrative record, **Defendant's Amended Motion to Admit Affidavit of Sherwin Holmes as Additional Evidence** and **Defendant's Motion for Leave to File Amended Motion to Vacate**

**Evidentiary Hearing or Limit Scope of Hearing** (Dkts. 23 and 24) be **DENIED** as **MOOT**.

ELIZABETH A JENKINS
United States Magistrate Judge

Dated: April 22, 2005
Case No. 8:04-CV-2657-T-24EAJ

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. 636 (b)(1).